421 So.2d 362 (1982)
Lisa Larsen PATIN
v.
INDUSTRIAL ENTERPRISES, INC., Great American Insurance Company and Gulf States Utilities Company.
No. 15099.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
Writ Denied December 10, 1982.
*363 Arthur Cobb, Baton Rouge, for plaintiff-appellant Lisa Larsen Patin.
James E. Moore, Baton Rouge, for defendant-appellee Industrial Enterprises, Inc. and Great American Ins. Co.
William H. Cooper, Baton Rouge, for defendant-appellee William L. Bowman.
Lynn E. Williams, and Charles M. Raymond, Baton Rouge, for City of Baton Rouge, etc.
Before LOTTINGER, COLE and CARTER, JJ.
LOTTINGER, Judge.
This is an action ex delicto for wrongful death. Lisa Larsen Patin, widow of Alcee Joseph Patin, filed the action in connection with the electrocution death of her husband. After a trial on the merits, judgment was rendered in favor of the defendants, and the suit was dismissed. Plaintiff has appealed.

*364 FACTS
The decedent died on May 10, 1978, while in the process of erecting a metal building owned by Industrial Enterprises, Inc. Plaintiff was employed by Cedric A. Vallet d/b/a Vallet Welding Construction Company.
A.J. Patin was killed when a twenty-foot long section of gutter which he was holding came into contact with uninsulated electric lines owned and operated by Gulf States Utilities Company. This accident occurred as the decedent attempted to attach the gutter to the building. In so doing, the decedent stood atop the building at its northwest corner. The roof was not yet in place. Patin reached into the building and lifted the section of gutter alongside him. Then he slid one end of the gutter across his thigh and pushed downward on it to try to swing the other end to a co-worker standing atop the west corner. However, in pushing downward, Patin lost control of the gutter, and the end of the gutter held by Patin swung upward and contacted the electric wires, electrocuting him instantly. The point of contact of the wire and the gutter was about twelve feet from the corner of the building where decedent stood.
Plaintiff, Lisa Larsen Patin, sued Industrial Enterprises, Inc., the owner of the building; Great American Insurance Company, Industrial Enterprises' insurer; and Gulf States Utilities Company, the owner of the electric wires. Made party defendants by way of an amending and supplemental petition were William Bowman, the engineer who drew up the plans for the building, and his insurer; and the City of Baton Rouge and Parish of East Baton Rouge. On motion of plaintiff, Industrial Enterprises and its insurer were dismissed with prejudice and Gulf States Utilities Company was dismissed without prejudice. William Bowman and the City of Baton Rouge and the Parish of East Baton Rouge were the only defendants remaining at the time of trial.
Plaintiff sought to prove that Bowman was negligent in drawing the plans for the building, in that the building was situated immediately adjacent to an electrical servitude, and in failing to provide instructions on how to safely proceed with construction in the area of the uninsulated electric wires. The City-Parish was alleged to have been negligent in having approved Bowman's plan and in allowing Gulf States to use nine-foot cross arms on its utility poles in an electric servitude only fifteen feet wide. The defendants entered a general denial and pled the affirmative defense of contributory negligence of the decedent.
The trial court rendered judgment in favor of defendants and dismissed the suit. This appeal followed.

SPECIFICATIONS OF ERROR
Plaintiff-appellant, Lisa Larsen Patin, contends the trial court erred:
1. in finding that no duty of the City-Parish had been breached; and
2. in not recognizing the full scope of the duty owed by an architect or civil engineer in designing a building.

SPECIFICATION OF ERROR NO. 1
The trial court found that it was the duty of the City-Parish (through the Building Official and his staff) to inspect the building plans and ensure that the proposed building did not violate the Baton Rouge Building Code. The lower court concluded that the City-Parish had fulfilled this duty.
However, plaintiff-appellant argues that the duty of the City-Parish is broader and includes a duty to secure the necessary safeguards to ensure safety to the public during construction, citing Section 103.1 of the Building Code[1] and Stewart v. Schmieder, *365 386 So.2d 1351 (La.1980). Mrs. Patin argues that this duty was breached when the City-Parish failed to alleviate the hazard posed to her husband by the live electric wires which ran in close proximity to the decedent's work area. She contends that the hazard should have been recognized from an inspection of the building plans or during a later on-site slab inspection by the City-Parish. The plans revealed that the building buttressed a servitude, but the type of servitude was not shown. Mrs. Patin argues that the City-Parish employee who inspected the plans should have inquired or otherwise learned what type of servitude lay immediately adjacent to the building. Once finding that the plans called for a metal building buttressing an electric servitude, the building official should have ordered all precautions necessary to ensure safety during construction, or require the civil engineer to provide the proper instructions, according to plaintiff.
We note initially that the section of the Building Code cited by plaintiff has not been made a part of the record. Plaintiff introduced into evidence a copy of the Building Code which did not contain the cited section (apparently added by a subsequent amendment.) We cannot take judicial cognizance of the Building Code (made a part of the City-Parish ordinances by reference) since same has never been filed with the clerk of this court, see La.R.S. 13:3712(B). Thus, plaintiff cannot rely on the section of the Building Code cited in her brief.
Moreover, while we might agree that under the cited section of the Building Code, the City-Parish has a duty to ensure safety to the public during constructions, we find that the risk of harm encountered by the decedent falls outside the scope of protection afforded by such duty. The duty of the City-Parish is to ensure that the building poses no unreasonable risk of harm during construction. The risks sought to be prevented are those which could result from a defective building, i.e., one which is improperly outfitted or structurally unsound. The City-Parish's duty does not extend to risks which are outside the building site and have no teleological connexity therewith. Rather, the duty is intended to protect from harms inherent in a flawed or defective building. Such was the situation in Stewart v. Schmeider, supra. Stewart involved claims for injury and wrongful death caused by the collapse of a building under construction. Liability vested with the City-Parish when the architect noted deviations from the plans and reported same to the City-Parish, and the City-Parish relied on the architect's representations that the deviations and problems had been corrected, rather than sending out an inspector to make sure of the structural soundness of the building.
Insuring public safety during construction is accomplished by examining the plans of the building and by making on-site inspections. In the case sub judice, the plans and specs were properly inspected by the City-Parish prior to construction, and an on-site inspection of the concrete slab was made prior to the commencement of metalwork by Vallet and his men. Thus, we agree with the trial court that the duty owed by the City-Parish to the decedent, i.e., to ensure that the proposed building would not present an unreasonable risk of harm to those constructing it, was fulfilled by the City-Parish.
*366 Because the risk of receiving an electrical shock from wires running outside the site and which did not serve the site falls outside of the scope of protection afforded by the City-Parish's duty to ensure public safety during constructions, we find that Mrs. Patin's first specification of error is without merit.

SPECIFICATION OF ERROR NO. 2
Mrs. Patin argues that William Bowman, the civil engineer who drew the plans, was negligent in failing to warn of the close proximity of the electric wires, and in not providing instructions for safe construction near the wires.
The Building Code requires the civil engineer or architect who submits building plans: to certify that the plans and specifications are in conformity with the Building Code, state fire code and state sanitary code; to provide a "stress sheet" showing structural details; and to produce a complete description of the kind and size of the building(s), the character of materials to be used, the ground area to be covered, and the net cubic contents of the building. It is undisputed that Mr. Bowman's plans met these requirements.
It is also undisputed that Mr. Bowman received instructions from the building's owner to locate the rear of the building adjacent to the electric servitude, thus making maximum utilization of the space available on the lot; that Mr. Bowman was not notified when construction started and was therefore unable to make required follow-up inspections; and that Mr. Bowman was hired only to draw up plans for the building and was not hired to supervise construction, although he was qualified to do so and would have undertaken such supervision for an additional fee, if so requested. Inasmuch as Mr. Bowman was responsible only for plans and not for construction, we find no duty on his part to provide instructions for safe metalworking in the area of the building near the wires.
The record shows conclusively that decedent and his co-workers discussed the proximity of the wires, which they knew were "live." We therefore pretermit discussion of Mr. Bowman's alleged duty to warn of the presence of the wires.
Plaintiff-appellant's assignment of error No. 2 is without merit.
Therefore, for the above and foregoing reasons, judgment of the trial court in favor of defendants William Bowman and the City of Baton Rouge and Parish of East Baton Rouge, is hereby affirmed. All costs are assessed to plaintiff-appellant, Lisa Larsen Patin.
AFFIRMED.
NOTES
[1] The partial section of the Building Code cited by plaintiff in brief reads:

"Section 103.1. Coordination of Codes. The building official shall have the power to enforce all of the provisions of this title; shall have general supervisory authority over the administration and enforcement of all building codes and ordinances, and shall coordinate the administration and enforcement of all such ordinances. All building permits shall be issued by him, and he shall collect all fees provided herein and transmit same to the director of finance.
"The building official shall have the power to examine premises for which permits have been issued and make such inspections thereof whenever in his opinion same are necessary to ensure that the construction is not in violation of the building codes.
"He shall, when requested by proper authority, make investigations in connection with matters referred to in the building code and written reports on same.
"He shall have the authority to issue such notices and orders as may be necessary to enforce compliance with the provisions of the building code, to remove illegal or unsafe buildings, to secure the necessary safeguards to ensure safety to the public during constructions...." (emphasis supplied)